# IN THE UNITED STATE DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISON

| | |
|---|---|
| JOHNNIE HOGAN,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DEERE AND COMPANY (d/b/a JOHN DEERE DES MOINES WORKS), CAMILE COLON, JAKE OAKLAND, and KRISTI CHRISTENSEN,<br><br>　　　　Defendants. | CASE NO.<br><br>**COMPLAINT<br>AND JURY DEMAND** |

COMES NOW Plaintiff Johnnie Hogan, by and through counsel, and hereby brings his causes of action against Deere and Company d/b/a John Deere Des Moines Works ("John Deere"), Camille Colon, Jake Oakland, and Kristi Christensen and hereby states to the Court as follows:

## NATURE OF THE CASE

1. This is an action under and pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. 1981.

2. Under Title VII and 42 U.S.C. 1981, Plaintiff is protected from discriminatory practices based on his race and his skin color.

## PROCEDURAL REQUIREMENTS

3. Plaintiff Hogan filed his race and skin color discrimination complaint with the Iowa Civil Rights Commission and Equal Employment Opportunity Commission on March 25, 2021, within the 300-day limitations period from the last discriminatory act alleged.

4. On September 7, 2022, less than ninety days prior to the filing of this Complaint,

the Equal Employment Opportunity Commission issued a Right to Sue Letter.

5. Plaintiff filed a second complaint alleging further retaliation with the Iowa Civil Rights commission on March 11, 2022, within the 300-day limitations period from the last discriminatory act alleged. Plaintiff has not yet received his Right to Sue Letter on this complaint from the Equal Employment Opportunity Commission.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 as this is a civil action arising under federal law.

7. Venue in the Southern District Court in Iowa is proper under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this claim occurred in Polk County, Iowa.

## PARTIES

8. Plaintiff Johnnie Hogan is a black male, and all times material hereto, was a citizen and resident of Polk County, Iowa.

9. At all times material hereto, Defendant John Deere was a corporation organized and existing under the laws of the state of Delaware and permitted to do business in Iowa, doing business as John Deere Des Moines Works in Ankeny, Iowa.

10. At all times material hereto, Defendant Colon was a citizen and resident of Polk County, Iowa, and was employed by Defendant John Deere as a Production Supervisor.

11. At all times material hereto, Defendant Oakland was a citizen and resident of Polk County, Iowa, and was employed by Defendant John Deere as a Manufacturing Supervisor.

12. At all times material hereto, Defendant Christensen was a citizen and resident of Polk County, Iowa, and was employed by Defendant John Deere as an Operations Manager.

13. Under the doctrine of *respondeat superior*, Defendant John Deere is legally liable for any damages caused to Plaintiff by the conduct of Defendants Colon, Oakland, and Christensen, or in the alternative, under the principles of ostensible agency, Defendant John Deere is legally liable for any damages caused to Plaintiff by the conduct of Defendants Colon, Oakland, and Christensen.

**FACTUAL BACKGROUND**

14. Plaintiff Johnnie Hogan is African American. He is a member of a protected class based on his race. Plaintiff's skin color is black. He is a member of a protected class based on his skin color.

15. Plaintiff began working for Defendant John Deere on September 7, 2010, as an assembler.

16. Plaintiff has worked for Defendant John Deere for the last 12 years and has worked in numerous departments during his tenure.

17. Defendant John Deere has allowed a culture of racism to flourish and thrive within the Des Moines Works facility.

18. Plaintiff Johnnie Hogan has been insulted, harassed, belittled, humiliated, and excluded all because he is a black male.

19. Plaintiff Johnnie Hogan was rarely referred to by his own name, and instead, was referred to by racist slurs and nicknames.

20. When Plaintiff first began working for Defendant John Deere, he was called "a stupid fucking nigger" on his first day at work.

21. Similar conduct continued to occur throughout Plaintiff's entire employment. He tried to ignore this conduct until 2019, when the cumulative impact of the racist harassment

resulted in his complaint to appropriate personnel.

22. In 2019, Plaintiff's co-worker Jeremey Wentzel dubbed Plaintiff "the angry black man," and soon, many of Defendant's employees referred to Plaintiff by this cruel nickname.

23. In December 2019, Plaintiff voluntarily bid into department D17 where he was supervised by Stacey Alger.

24. Plaintiff experienced daily harassment in department D17 from his supervisors and coworkers.

25. On December 20, 2019, Alger requested to see the Plaintiff in his office.

26. Once Plaintiff arrived, Alger showed Plaintiff a picture of a bi-racial baby and asked, "Which one of your cousins or homies got ahold of my baby?" and then laughed when Plaintiff said nothing.

27. On January 6, 2020, Wentzel and Alger announced that "the angry black man is here" when Plaintiff arrived at a morning meeting.

28. On January 27, 2020, Plaintiff's co-workers Jeremy Wentzel, Ted Brown, and Bob Whylie called Plaintiff an angry black man and joked about eating fried chicken during Plaintiff's lunch break.

29. The racist stereotype of African Americans enjoying fried chicken can be traced back to materials produced and distributed by the Ku Klux Klan.

30. On February 4, 2020, Ted Brown asked Plaintiff if he ever worked in the cotton industry. When Plaintiff responded "yes," Brown said, "It's good you and your ancestors have something in common" referring to enslaved people who were forced to pick cotton.

31. On March 11, 2020, Wentzel asked Plaintiff to teach him how to make cornbread because his "wife really likes black people cornbread."

32. The types of racist comments listed above occurred on a daily basis and Plaintiff always made it known that these comments were unwelcome and unacceptable in the workplace.

33. In November 2020, Plaintiff bid to transfer to Department 40A to try and escape the daily harassment.

34. Before the transfer was approved, Plaintiff continued to be harassed in Department D17.

35. On November 16, 2020, Plaintiff made a complaint to one of Defendant Deere's Civil Rights Liaisons, Andrew Thomas, about the racist harassment through Defendant John Deere's compliance hotline.

36. Nothing happened as a result of this complaint.

37. On December 7, 2020, Alger made threats of violence against Plaintiff saying that Plaintiff "needed to be chained to a dock."

38. Also on December 7, 2020, Ray Jacobs told Plaintiff that he would never be found if Jacobs threw the Plaintiff into a box of black machine parts.

39. On December 23, 2020, Jacobs also made threats towards Plaintiffs young children, joking that he "left them in the pool this morning" to drown.

40. When Plaintiff began working in Department 40A in January 2021, he was met with more racism and bigotry.

41. While in Department 40A, Plaintiff was also regularly referred to as "boy" even though he is a grown adult because Alger and co-workers Hoa Leung and Anthony Stewart thought it was funny to talk to Plaintiff as if he were enslaved and they were his masters.

42. Throughout early 2021, Plaintiff was constantly called "the angry black man" and was continually referred to as a "Nigger" by his coworkers and supervisors.

43. On March 1, 2021, Plaintiff complained again to the Defendant's own hotline about the racism he was experiencing on a daily basis.

44. On March 5, 2021, Plaintiff then complained to Shannon McGee, Defendant's Head of Labor Relations, specifically about Alger's harassment.

45. Alger was terminated following this complaint.

46. Following Alger's termination, Plaintiff's other coworkers and supervisors began to avoid him.

47. Defendant Christensen, Operations Manager at Defendant John Deere, began to ignore the Plaintiff and walk away from him when he would try to talk to her.

48. Other employees would refuse to talk to Plaintiff without a witness present because they said they feared he would try to have everyone terminated. Plaintiff just wanted to work in a harassment free environment.

49. On March 25, 2021, Plaintiff filed a complaint with the Iowa Civil Rights Commission hoping to put an end to the harassment and exclusion.

50. In April 2021, a coworker named Shannon McGee told Plaintiff he would not speak with him because of Plaintiff's complaints about harassment. Plaintiff and McGee were amicable prior to this incident.

51. Since Plaintiff filed his Civil Rights complaint, he has still been called by racist and derogatory names.

52. Plaintiff's supervisors, Defendants Colon, Oakland, and Christensen began to over-supervise him and harass him over menial matters.

53. Defendants Colon, Oakland, and Christensen would observe Plaintiff and take meticulous notes about Plaintiffs activities, such as how much time he would spend in the

bathroom.

54. Defendants Oakland and Colon would yell at Plaintiff and harass him over acts that they would not yell at other employees over.

55. Defendants Colon, Oakland, and Christensen would visit Plaintiff at his workspace eight to twelve times during his shift, far more often than any other assemblers.

56. On June 15, 2021, Defendant Colon repeatedly told Plaintiff to work harder and work faster even though he has never had issues with his work performance or meeting deadlines.

57. On July 16, 2021, an employee named Ralph Swink came into the work area holding a motorcycle helmet with Confederate flags and imagery printed on it. Swink then referred to another employee, Michelle Brown, as "a stupid nigger" because she is Black.

58. Swink then noticed that Plaintiff had witnessed the whole thing and tried to approach him. Plaintiff walked away.

59. On January 19, 2022, Defendant Oakland yelled at Plaintiff saying that he has "a bad attitude" and "needs to get his ass up to work."

60. Defendant Oakland then clarified that he was not singling Plaintiff out, despite the fact that Defendant Oakland never treated any other assembler in this manner.

61. Plaintiff never experienced this type of supervision prior to filing his complaint with the Iowa Civil Rights Commission.

62. On April 21, 2022, Dan Groenenboom, a maintenance employee of Defendant John Deere, came to do repair work near Plaintiff's workstation.

63. Plaintiff asked Groenenboom if he was there to fix some broken lights, but Groenenboom responded that he would not fix the lights because he thought Plaintiff would like

it better "with the lights off, since it's easier for you to hide." Plaintiff made it clear that he did not find this racist joke funny or acceptable.

64. Plaintiff then complained about Groenenboom's remarks to his Team Lead, Luke Pingel, who did nothing about the racist remarks.

65. Plaintiff is constantly worried about what will happen next and is walking on eggshells to avoid angering his supervisors who are always watching him.

66. This is a summary, with examples, of the discrimination, harassment, and retaliation Plaintiff has suffered on a daily basis during his employment at Defendant John Deere.

67. On May 19, 2022 Plaintiff was granted short term disability leave from Defendants as a result of the mental distress and emotional distress he suffered because of the discrimination and harassment he has endured.

### COUNT I – VIOLATION OF 42 U.S.C. SECTION 1981
### AGAINST ALL DEFENDANTS

68. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1–67, above.

69. Defendants subjected Plaintiff to unwelcome conduct by harassing, threatening, and humiliating him through the use of racial slurs and racially charged language.

70. This conduct was severe and pervasive. On a daily basis, Plaintiff was subjected to racist harassment from his co-workers and supervisors.

71. Race was a motivating factor for Defendants' actions.

72. Plaintiff complained about the race discrimination he experienced and otherwise opposed practices made unlawful by 42 U.S.C. section 1981.

73. Defendants retaliated against him because of his race and because of his

8

complaints opposing discrimination.

74. As a result of Defendants' illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to mental and emotional distress, fear, anguish, anxiety, humiliation, intimidation, embarrassment, physical sickness, lost enjoyment of life, medical expenses, past and future lost wages, past and future lost benefits, future earnings, and other emoluments of employment.

75. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate him for his injuries and damages, for punitive damages in an amount sufficient to punish Defendants and to deter them and others from similar conduct in the future, for prejudgment and post judgment interest, for attorney's fees and expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Civil Rights Act of 1866.

**COUNT II – RACE AND SKIN COLOR DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT DEERE & CO.**

77. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1–67, above.

78. Section 703(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

79. Plaintiff experienced discrimination on the basis of his race and skin color.

80. Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits

employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

81. Plaintiff complained about race discrimination he experienced and otherwise opposed practices made unlawful by Title VII of the 1964 Civil Rights Act.

82. Defendants, their agents, and/or employees retaliated against him because of his race and because of his complaints opposing discrimination.

83. As a result of Defendants' illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to mental and emotional distress, fear, anguish, anxiety, humiliation, intimidation, embarrassment, physical sickness, lost enjoyment of life, medical expenses, past and future lost wages, past and future lost benefits, future earnings, and other emoluments of employment.

84. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate him for his injuries and damages, for punitive damages in an amount sufficient to punish Defendants and to deter them and others from similar conduct in the future, for prejudgment and post judgment interest, for attorney's fees and expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Title VII of the 1964 Civil Rights Act.

## JURY DEMAND

COMES NOW Plaintiff Johnnie Hogan, by and through counsel, and hereby demands a trial by jury in this matter.

Dated: December 5, 2022.

Respectfully Submitted,

*/s/ Devin C. Kelly*
ROXANNE CONLIN AT0001642
DEVIN C. KELLY AT0011691
ROXANNE CONLIN & ASSOCIATES, P.C.
3721 SW 61st Street, Suite C
Des Moines, IA 50321-2418
Phone: (515) 283-1111; Fax: (515) 282-0477
Email: roxanne@roxanneconlinlaw.com
         dkelly@roxanneconlinlaw.com
cc: dpalmer@roxanneconlinlaw.com
ATTORNEYS FOR PLAINTIFF